[Cite as *State v. Schwarm*, 2017-Ohio-7626.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160677 |
| | | TRIAL NO. B-1505471 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RONALD SCHWARM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 15, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Candace Crouse*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   Defendant-appellant Ronald Schwarm appeals his convictions for two counts of rape and one count of gross sexual imposition. Because the trial court erred by imposing more than the maximum sentence allowed by law for the rape offenses and failed to make the necessary findings on the record at the sentencing hearing to support the imposition of consecutive sentences, we vacate the sentences imposed for rape and the imposition of consecutive sentences and remand for resentencing. The judgment of the trial court is otherwise affirmed.

### *Factual Background*

{¶2}   On April 8, 2016, Schwarm pled guilty to two counts of rape and one count of gross sexual imposition. The rape offenses were both first-degree felonies. Schwarm's indictment alleged that he had committed each rape offense "on an unspecified date from summer of 1996 through summer of 1998." The offense of gross sexual imposition was a third-degree felony, alleged in the indictment to have been committed by Schwarm on July 9, 2015.

{¶3}   For each rape offense, the trial court sentenced Schwarm to 11 years' imprisonment. For the offense of gross sexual imposition, the court sentenced him to two years' imprisonment. The court ordered the rape sentences to be served concurrently to each other, but consecutively to the sentence imposed for gross sexual imposition, resulting in an aggregate sentence of 13 years' imprisonment.

***Sentencing Issues***

{¶4}    In his first assignment of error, Schwarm argues that the trial court erred in sentencing him to 11-year prison terms for the rape offenses because the sentences exceeded the maximum allowed by law at the time that the offenses were committed.

{¶5}    Under R.C. 2953.08(G)(2), we may only vacate or modify a defendant's sentence if we clearly and convincingly find that the record does not support any mandatory sentencing findings or that the sentences imposed are otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶6}    Schwarm's indictment alleged that each rape offense was committed "on an unspecified date from summer of 1996 through summer of 1998." Until June 30, 1996, an offender convicted of a first-degree felony was subject to an indeterminate sentence, with the maximum sentence being 25 years' imprisonment. *See* former R.C. 2929.11.

{¶7}    On July 1, 1996, Am.Sub.S.B. No. 2 ("S.B. 2") went into effect. It eliminated indeterminate sentencing and provided that the available sentencing range for a first-degree felony was three to ten years' imprisonment. *State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, ¶ 10. With respect to the case at bar, the provisions of S.B. 2 were effective from July 1, 1996, through the end of the date range specified in Schwarm's indictment.

{¶8}    On September 30, 2011, Am.Sub.H.B. No. 86 ("H.B. 86") took effect. H.B. 86 increased the maximum sentence available for first-degree-felony offenses to 11 years' imprisonment. *Thomas* at ¶ 13. H.B. 86 also contained uncodified law

addressing the effect of R.C. 1.58(B) on its new sentencing provisions. R.C. 1.58(B) provides that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." The uncodified law of H.B. 86 provided for the application of R.C. 1.58(B), specifying that if the potential sentence for an offense was reduced under H.B. 86, then R.C. 1.58(B) would apply to give the benefit of the reduced sentence to offenders who had not yet been sentenced. *Thomas* at ¶ 14. H.B. 86 was in effect at the time of Schwarm's sentencing.

{¶9} If Schwarm committed the rape offenses before July 1, 1996, the date that S.B. 2 went into effect, he would have been entitled to the reduced-sentence benefits of H.B. 86, and the maximum sentences that he could have received for each of the rape offenses would have been 11 years' imprisonment, instead of the maximum sentence of 25 years' imprisonment that was provided for at the time the offenses were committed. *Id.* at ¶ 17. But if Schwarm committed the offenses on July 1, 1996, or thereafter, he should have been sentenced under the provisions of S.B. 2, and could only have received a maximum sentence of ten years' imprisonment for his offenses. *See State v. Johnson*, 9th Dist. Summit No. 26788, 2013-Ohio-4680, ¶ 8 (holding that an offender who had committed a first-degree felony after the effective date of S.B. 2, but prior to the effective date of H.B. 86, and who was sentenced after the effective date of H.B. 86, faced a maximum penalty of ten years' imprisonment).

{¶10} Here, the state alleges that because Schwarm pled guilty to charges beginning with an unspecified date in the "summer of 1996," this included a few days

prior to July 1, 1996, when the maximum sentence was 25 years. Therefore, the state argues, Schwarm could be sentenced to 11 years. Because Schwarm pled guilty to committing offenses that occurred within an indeterminate date range that arguably covered both of these time periods, we must determine what law applies.

{¶11} The Fourth Appellate District was faced with a similar issue in *State v. Mollohan*, 4th Dist. Washington No. 98 CA 13, 1999 WL 671824 (Aug. 19, 1999). In *Mollohan*, the defendant was found guilty of gross sexual imposition, a third-degree felony. The indictment had alleged that Mollohan committed the offense "on or about summer through Autumn, 1996," encompassing time periods that were both pre-S.B. 2 and post-S.B. 2. *Id.* at *4. Unlike the case at bar, Mollohan faced a lesser sentence under the pre-S.B. 2 law than under the law after S.B. 2 took effect. *Id.* at *3. Noting that both criminal statutes and indictments are to be strictly construed against the state and in favor of the accused, the *Mollohan* court held that the defendant was entitled to the "proverbial 'benefit of the doubt' " that the offense occurred prior to the effective date of S.B. 2. *Id.* at *5.

{¶12} We agree with this reasoning. Schwarm pled guilty to both rape offenses as alleged in the indictment, and the record contains no additional information as to a specific date on which the offenses occurred. Under the rule of lenity, criminal statutes are to be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A). Consequently, we conclude that Schwarm is entitled to be sentenced under the law in effect post-S.B. 2, and that the maximum sentence that he could have received was ten years' imprisonment for each rape offense.

{¶13}  Accordingly, the trial court erred in imposing an 11-year sentence for each offense of rape, as those sentences were contrary to law.  The first assignment of error is sustained.

{¶14}  Schwarm argues in his second assignment of error that the trial court erred in imposing consecutive sentences without making the findings required by R.C. 2929.14(C).

{¶15}  R.C. 2929.14(C) requires a trial court to make various findings before imposing consecutive sentences.  A trial court must make these mandated findings at the sentencing hearing and incorporate the findings into the sentencing entry.  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.  The trial court need not recite the findings verbatim, but a reviewing court must be able to discern from the record that the court engaged in the requisite analysis and determine that the record contains evidence to support the findings.  *Id.* at ¶ 29.

{¶16}  The trial court in this case incorporated findings under R.C. 2929.14(C) into Schwarm's sentencing entry.  It specifically found that consecutive sentences were necessary to protect the public and to punish Schwarm and were not disproportionate to Schwarm's conduct or the danger he posed to the public.  The court additionally found that at least two of Schwarm's offenses had been committed as a part of one or more courses of conduct, and that the harm caused by two or more of the offenses had been so great or unusual that a single prison term would not adequately reflect the seriousness of Schwarm's conduct.  *See* R.C. 2929.14(C)(4)(b).

{¶17}  While these findings were included in the sentencing entry, the trial court did not state them on the record at the sentencing hearing.  The state contends that the findings can be discerned from the language used by the court when

sentencing Schwarm. The state specifically argues that the trial court detailed the harm suffered by the victims of Schwarm's offenses, and that the court also stated, "Because of the relationship [Schwarm] had [with] these two women. Because of the protection, it is a consecutive sentence." We are not persuaded. While the trial court need not engage in a word-for-word recitation of findings under the statute, we cannot discern that it engaged in the requisite analysis under R.C. 2929.14(C) from these comments or from our review of the record.

{¶18} Therefore, we hold that the trial court erred in imposing consecutive sentences without making the requisite findings at the sentencing hearing. The second assignment of error is sustained.

### *Competency*

{¶19} In his third assignment of error, Schwarm argues that the trial court erred by failing to sua sponte order that he undergo a competency evaluation prior to sentencing. He contends that an evaluation was warranted because he presented a confused demeanor and demonstrated irrational behavior, and because a psychiatric report had found him to be in the early stages of a neurocognitive disorder.

{¶20} Due-process principles mandate that a criminal defendant who is legally incompetent shall not be subjected to a trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). Pursuant to R.C. 2945.37(B), the issue of a defendant's competence to stand trial may be raised by the court, the prosecution, or the defense. Where the record contains evidence to create a sufficient doubt of a defendant's competence, further inquiry is necessary. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Whether to inquire further into a

defendant's competence by ordering a competency evaluation or competency hearing is within the trial court's discretion. *Berry* at 360.

{¶21} The following factors should be considered by the trial court when determining whether to order a competency hearing: "(1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein*, 40 Ohio App.3d 57, 531 N.E.2d 732 (8th Dist.1987), paragraph two of the syllabus; *see State v. Sewell*, 1st Dist. Hamilton Nos. C-930016 and C-930026, 1993 WL 547183, *1 (Dec. 1, 1993).

{¶22} Following our independent review of the record, we cannot find that the trial court abused its discretion in failing to order a competency evaluation. Defense counsel expressed no doubts as to Schwarm's competence. During the plea hearing, defense counsel represented to the court that Schwarm was competent to enter a guilty plea. And at the sentencing hearing, defense counsel acknowledged that Schwarm had physically deteriorated with respect to his memory, but stated, "[H]e's absolutely cognizant that he knows what is going on here. There is not an issue related to that." The record does not demonstrate that Schwarm's demeanor during these proceedings indicated any signs of incompetence.

{¶23} On appeal, Schwarm points to his comments during the sentencing hearing to argue that he had exhibited irrational behavior. When given the opportunity to speak at sentencing, Schwarm stated, "Well, I am remorseful. I do have these dreams still today about being in the military and these young girls coming to me. And I send them back not having any intercourse with them. So the mama-san doesn't get mad at them. And I pay the money. And so then tell them to

get out of the business." These isolated comments do not demonstrate that Schwarm behaved irrationally, and they are put into context by a psychiatric report issued by the Court Clinic following a court-ordered examination of Schwarm. The psychiatric report explained that Schwarm had engaged the services of underage prostitutes provided to him by a "mama-san" when stationed in Korea with the United States Army, and that he felt lingering guilt over these encounters. Schwarm's comments at sentencing could be described as an attempt to mitigate or explain his behavior with respect to the rape offenses.

{¶24} The psychiatric report gives no indication that Schwarm was incompetent. The report indicates that Schwarm was experiencing mild memory problems and could be in the early stages of Alzheimer's disease. But with respect to Schwarm's cognitive abilities, the report indicates that he appeared to be of average intellectual ability, presented his thoughts in a well-organized fashion, and was fully oriented to time, place, and situation.

{¶25} Because the record did not contain evidence to create a sufficient doubt of incompetence, we find that the trial court did not err in failing to sua sponte order that Schwarm undergo a competency evaluation. The third assignment of error is overruled.

### Ineffective Assistance

{¶26} In his fourth assignment of error, Schwarm argues that his counsel was ineffective for failing to raise the issue of Schwarm's competency at any point during the proceedings.

{¶27} Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland*

*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142.

{¶28} Because the record did not contain evidence to create a sufficient doubt that Schwarm was incompetent, we cannot find that counsel was deficient for failing to raise the issue of Schwarm's competency. The fourth assignment of error is overruled.

### *Conclusion*

{¶29} Because the trial court erred in imposing 11-year-prison terms for the offenses of rape and in imposing consecutive sentences without the requisite findings, we vacate those portions of Schwarm's sentence and remand for resentencing. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part and sentences vacated in part, and cause remanded.

CUNNINGHAM, P.J., and ZAYAS, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.